IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHRISTINA STOMMEL, | MEMORANDUM DECISION |
| Plaintiff, | AND ORDER |
| vs. | Case No.  2:13CV821DAK |
| LNV CORPORATION, | Judge Dale A. Kimball |
| Defendant. | |

This matter is before the court on Defendant LNV Corporation's Motion for Summary Judgment and Plaintiff Christina Stommel's Motion for Summary Judgment.  On January 8, 2015, the court held a hearing on the motions.  At the hearing, Plaintiff was represented by David M. Bennion and Zack L. Winzeler, and Defendant was represented by R. Willis Orton.  The court has carefully considered the materials submitted by the parties as well as the law and facts relating to the motions.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Christina Stommel filed this action in defense of Defendant LNV's threatened foreclosure of her primary residence.  On October 15, 2008, Stommel purchased the residence from Matthew Phair.  Phair had encumbered the property with three Deeds of Trust in Phair's name as grantor and borrower.  The first two Deeds of Trust, both dated December 30, 2005, were Phair's first and second mortgages to Lehman Brothers Bank FSB.  The third Deed of Trust

was a Commercial Deed of Trust, dated March 28, 2008, from Phair to America West Bank.

In preparation for the closing, Select Title Agency contacted America West Bank to obtain the payoff figure for the America West Deed of Trust. America West, through its Commercial and Real Estate Loan Officer Jeffrey Bean, sent an email to Select Title stating, "There is no payoff on Matthew Phair's residence. The bank only put the lien on as an abundance of caution and will be releasing it once we have been notified the sell [sic] has taken place." In connection with commercial loans that America West made to Phair's commercial development company, Cortland Ridge Development, America West required Phair to execute the America West Deed of Trust. The America West Deed of Trust was not to provide America West with collateral for the commercial loans to Cortland Ridge but, instead, was to prevent Phair from further encumbering the property which was his primary residence.

The transaction between Stommel and Phair was accomplished through a "split closing." Phair used Select Title as his title agent and Stommel used Inwest Title Services. Select Title researched the payoff amounts for the three deeds of trust encumbering the property and issued Stommel a policy of title insurance after the closing.

After the sale of the property was complete, Select Title sent the HUD-1 Settlement Statement for the transaction to America West as evidence that the sale had been finalized. Despite this evidence, America West did not record a reconveyance of the America West Deed of Trust before America West went into receivership.

On May 1, 2009, the Utah Department of Financial Institutions closed America West and the Federal Deposit Insurance Corporation ("FDIC") took over as America West's receiver. On April 29, 2010, the FDIC assigned the America West Deed of Trust on Stommel's property to

Defendant LNV.

Almost three years later, on April 8, 2013, LNV sent Stommel a letter threatening to foreclose the America West Deed of Trust unless Stommel paid over $300,000 that LNV claimed was still owing on loans America West made to Phair's company, Cortland Ridge. Stommel refused to pay LNV's demand, and LNV threatened to foreclose its lien on the property to satisfy the debt. In August 2013, Stommel sued LNV in state court in Utah. LNV then removed the case to this court.

## DISCUSSION

LNV moves for summary judgment on three grounds: (1) Stommel's promissory estoppel claim fails because she cannot establish that she relied on any statements by America West to reconvey the Deed of Trust; (2) all three of Stommel's causes of action are predicated on her promissory estoppel claim; and (3) the four-year statute of limitations applicable to the promissory estoppel claim started to run when America West failed to reconvey the Deed of Trust after it received notice of Stommel and Phair's closing.

Stommel moves for summary judgment on her declaratory judgment and injunctive relief claims, arguing that America West's statements that there was no payoff amount due on the Deed of Trust at the closing prevents LNV from seeking to foreclose on the Deed of Trust against Stommel several years later. Stommel seeks a declaratory judgment that the Deed of Trust has no value and a permanent injunction against LNV barring it from foreclosing the Deed of Trust.

Therefore, LNV moves for judgment on all three claims, while Stommel moves for judgment on only her declaratory judgment and injunctive relief claims. Because the arguments in both motions overlap, the court will address the motions together.

3

**A. Promissory Estoppel Claim**

    **1. Statute of Limitations**

LNV contends that Stommel's promissory estoppel claim is barred by the four-year statute of limitations for such claims because the statute began to run shortly after the closing in October of 2008 when America West failed to release the Deed of Trust. LNV argues that as soon as America West failed to release the Deed of Trust, Stommel's property was encumbered and damages occurred immediately, regardless of whether Stommel knew about it. Stommel, however, contends that LNV's arguments ignore the fundamental difference between an affirmative claim that Stommel could have asserted against America West for its failure to release the deed of trust and her defensive promissory estoppel claim asserted here as a result of LNV's threatened foreclosure.

LNV argues that the promise was not breached any more or less and Stommel was not damaged any more or less in April 2013 than she was in October 2008 when the alleged promise was broken. However, this case presents two different kinds of harm caused by two different kinds of conduct that occurred five years apart. In 2008, America West failed to release the Deed of Trust and Stommel was unknowingly harmed by a cloud on her title to the property. Whereas, in April 2013, LNV notified Stommel that she needed to pay over $300,000 or it would foreclose on her personal residence. The initial cloud on title did not result in any financial loss–there was no payoff amount and accordingly no risk of foreclosure. By contrast, when LNV decided to take the position that the Deed of Trust had value and threatened to foreclose, it created a separate harm. LNV stepped into the shoes of America West and its rights to the Deed of Trust are exactly the same rights America West had. America West declared that there was no payoff

4

on the Deed of Trust.  LNV's attempt to use a Deed of Trust already declared to have no payoff amount to foreclose on a property no longer held by the grantor of the Deed of Trust is a new cause of action and harm.

This court already noted this distinction in its prior Memorandum Decision and Order on LNV's motion to dismiss.  Again, the court concludes that Stommel's defensive claims to foreclosure did not arise until LNV threatened to foreclose her home in April 2013.   Because the statute of limitations did not begin to run until that time, Stommel's claims are timely brought.  Accordingly, the court concludes that LNV's arguments with respect to the statute of limitations are without merit and do not provide a basis for summary judgment in LNV's favor.

### 2.  Merits of Claim

LNV argues that Stommel's promissory estoppel claim fails because America West's promises were made to Select Title, Phair's title agent, not Stommel, and Stommel could not reasonably rely on Select Title.  America West told Select Title in an email that there was no payoff amount on the Deed of Trust and it would release the Deed of Trust when it was given proof of the sale.  LNV argues that Select Title was Phair's escrow agent, not Stommel's, and Stommel could not rely on America West's statements to Select Title.  Stommel, however, argues that even though it was a split closing, where each party had his or her own title agent, Select Title was her agent for certain functions it undertook in connection with the closing.

In *Cooper Enterprises, PC v. Bright Title Co.*, 2010 Ut App 135 ¶ 11, the court explained that "[a]n escrow agent has a fiduciary duty to both parties to a transaction," and such principle applies in the context of "split closings" as well.   In *Cooper*, the parties had a split closing and the buyer's title company claimed it did not owe any duties to the seller.  *Id.* ¶ 11 n.5.  The court

5

rejected that argument and explained that "it had duties as the escrow agent for both sides when it accepted and held the earnest money in escrow." *Id.*

In this case, Select Title held money in escrow for the closing transaction and issued Stommel title insurance. LNV argues that an escrow agent only assumes its contractually prescribed obligations and is considered only a limited agent. Although there is not a written escrow agreement in evidence, Select Title undertook certain functions in connection with the closing. Select Title obtained the payoff information for all three deeds of trust that Phair had encumbering the property. Both Stommel and her title agent relied on Select Title when it undertook such role. The court does not believe that it is unreasonable to conclude that Select Title was acting as a limited agent for the other parties to the transaction when it obtained the payoff amounts. The REPCs guarantee free and clear title. Moreover, in the world of real estate transactions, it would seem impractical to require both title companies and/or the buyer herself, as suggested by LNV, to obtain the same information from the same financial institutions. In this case, America West sent the payoff information to Select Title in written form in an email. To argue that only Phair could rely on such a writing is unreasonable. A writing indicating no payoff amount and a promise to release the deed upon closing could be relied upon by all parties to the transaction. Select Title also issued Stommel title insurance based on the information it obtained from America West. Kristy Kelley at Select Title testified in her deposition that she believed Select Title had a duty to Stommel in connection with researching the marketability of the property and issuing her title insurance policy. In connection with issuing the title insurance policy, Select Title represented that it was "insuring the ownership and evidencing marketability of [Stommel's] recent real estate purchase." Select Title thus had a duty to Stommel in

6

determining whether she was obtaining clear title.  Therefore, it is reasonable to conclude that Select Title was acting as a form of limited agent in securing the information from America West and its knowledge can be imputed to Stommel for purposes of her promissory estoppel claim.

Even if Select Title acted as Stommel's limited agent and its knowledge could be imputed to her, LNV further argues that Stommel cannot show that she reasonably relied on America West's promise.  LNV asserts that Stommel has not produced any evidence showing that she relied on America West's promise as compared to relying on Select Title, who received the promise.  LNV contends that if Stommel did not know about the promise at the time it was made and her reliance occurred prior to the closing, it could not have induced action or forbearance on her part.

Stommel testified that she did not know the specifics of the statements at the time, but she knew that she was receiving clean title to the property.  LNV's arguments incorrectly assume that because Stommel did not have actual knowledge of America West's specific promise to release the Deed of Trust, she cannot rely upon it.  However, under Utah law, an agent's knowledge of a transaction it is transacting for its principal is imputed to the principal.  *Swan Creek Village Homeowners Assoc. v. Warne*, 2006 UT 22, ¶ 27.  Select Title acted as Stommel's agent when it sought information regarding payoff amounts and what was necessary to convey clear title.  Select Title relied on America West's promises to meet its duties to Stommel and Select Title's knowledge and reliance upon America West's promises is imputed to Stommel.

LNV's argument about reliance ignores the practical reality that Stommel and Phair contracted to buy and sell the property and engaged escrow agents to close the transaction.  In performing one of the most basic functions of an escrow agent, Select Title obtained the payoff

information for the transaction.  No buyer of property independently contacts the holders of

deeds for purposes of real estate closings, and they should not have to because they have agents

acting on their behalf.

In addition, Stommel's reliance on being given clear title is obvious.  No buyer would

proceed with a closing to buy property if he or she knew that a separate Deed of Trust between

the prior owner and another bank, in an amount as much as his or her own mortgage, would be

remaining as an encumbrance on the property.  Stommel went through with the closing because

of the belief that she was obtaining clear title to the property.  From the facts and circumstances

in evidence, a trier of fact could easily find Stommel's actions in reliance on America West's

promise to be reasonable.  The court, therefore, finds no basis for granting LNV's motion for

summary judgment on Stommel's promissory estoppel claim.

## B.  Declaratory Judgment Claim

Stommel argues that she is entitled to summary judgment on her claims for declaratory

judgment and injunctive relief because America West, through its email to Select Title stated that

there was no payoff due on the Deed of Trust.  LNV, however, argues that the court should deny

Stommel's motion for summary judgment because declaratory judgment is the wrong mechanism

for obtaining relief because it is not a substantive cause of action, the declaratory judgment claim

is barred by the statute of limitations, and the Deed of Trust has value based on the balance of

Phair's underlying indebtedness regardless of the payoff assessment of one of America West's

employees.

First, LNV contends that Stommel's declaratory judgment cause of action is actually a

procedural remedy that hinges on America West's promise and, thus, is only a reiteration of the

promissory estoppel claim.  Stommel, however, asserts that her declaratory judgment cause of action is a separate action allowed under Utah statute.  Stommel seeks a declaration from the court that the Deed of Trust is invalid and unenforceable.

Utah Code Section 78B-6-408 provides that "[a] person with an interest in a deed, will, or written contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may request the district court to determine any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations."  Utah Code Ann. § 78B-6-408.  This statute expressly allows the parties to seek a declaration of the validity of a Deed of Trust and the rights of the parties to that deed.

LNV has threatened to foreclose Stommel's property based on a Deed of Trust the prior owner of the property had in place with LNV's predecessor in interest.  The threatened foreclosure would wipe out Stommel's ownership interest in her personal residence.  Stommel seeks a declaratory judgment that the America West Deed of Trust is invalid and unenforceable based on America West's declaration that the Deed of Trust required no payoff.  Utah's Declaratory Judgment statute contemplates judicial determination of disputes concerning the validity of a deed.  Stommel is seeking precisely the relief afforded by the statute and does not need to bring a separate or underlying cause of action to obtain such relief.

LNV asserts that Utah's Declaratory Judgment Act does not provide a basis for Stommel to seek a declaration that the Deed of Trust has a monetary value of zero and that LNV is not entitled to foreclose the Deed of Trust against Stommel.  LNV claims that rather than seeking an interpretation of the parties' rights regarding the Deed of Trust, Stommel instead asks the court

9

for a declaration that the Deed of Trust has no value based solely on America West's promise to Select Title.

However, independent of the promise that America West made to release the Deed of Trust, the email America West sent to Select Title declared that "there is no payoff on Matthew Phair's residence."  This declaration is different in nature from the promise to release the Deed of Trust.  America West's declaration that there was no payoff amount did not require any action from anyone.  It is a clear and unambiguous statement from the beneficiary of the Deed of Trust that the monetary value of the Deed of Trust was zero.

In addition, it does not matter whether Kelley or Select Title were acting as escrow agents for Phair alone or for both Phair and Stommel because Stommel's motion is not based on any promise by America West, it is based on America West's statement of its own valuation of the Deed of Trust.  It is undisputed that America West told Select Title that there was no payoff on the Deed of Trust.

LNV also argues that Stommel has not proposed any legal theory as to how the promise made by America West to Select Title would be enforceable against LNV as successor-in-interest to America West.  But the value of the Deed of Trust did not change when the FDIC took control of America West's assets or when the FDIC assigned the Deed of Trust to LNV.  LNV received the value of the Deed of Trust, which America West had already declared was zero.

LNV further contends that America West never told Select Title that the Deed of Trust had no value.  LNV asserts that the words "there is no payoff" does not equate to a statement that the value of the Deed of Trust was zero.  There was value to America West in having the Deed of Trust in place because of Phair's personal guaranty of his commercial ventures, and LNV claims

that such value survived the sale of Phair's residence to Stommel and the transfer of the Deed of Trust to the FDIC and then to LNV.

However, LNV wrongly characterizes the Deed of Trust as security for Phair's commercial note. The evidence in the record only demonstrates that the Deed of Trust was security for Phair's personal guaranty. Phair already had two mortgages on his personal residence and the evidence demonstrates that the America West Deed of Trust was a cautionary measure to prevent Phair from overextending his personal indebtedness. There is no evidence in the record that the Deed of Trust would have any value to America West after Phair sold the property to Stommel. Phair's first two mortgages on the property were paid off in connection with the closing and Phair did not retain any interest in the residence after the sale to Stommel. Therefore, there could be no remaining value to America West to maintain a cautionary Deed of Trust on the property. Accordingly, there remained no value to the Deed of Trust when it transferred to LNV as America West's successor-in-interest.

Moreover, Phair's business enterprise, Cortland Ridge, defaulted on its Note after Phair sold his personal residence to Stommel. By the time it defaulted, America West had already stated that the Deed of Trust on Phair's personal residence required no payoff and had no value. The property no longer had any connection to Phair's personal indebtedness or ability to guaranty his commercial loans. The property had been sold to Stommel and Stommel had no connection to Phair or his commercial loans.

LNV also wrongly contends that the plain language of the Deed of Trust secured the full $250,000 amount with Phair's property as collateral. If LNV's argument was true, a deed of trust would always be worth the face amount even if the debt were paid down, paid off, forgiven, or

11

put in place merely out of an abundance of caution, as was the case with America West Deed of Trust. Once Phair's first two loans were closed out and the property was sold to Stommel, there was no need for the Deed of Trust to stay on Stommel's property and the Deed of Trust had no value to America West. LNV stands in America West's position as its successor-in-interest. A week after closing, America West could not have demanded $300,000 from Stommel. Likewise, LNV cannot demand that from Stommel five years later.

LNV further contends that Stommel has not shown that Jeffrey Bean, the loan officer who sent the email for America West to Select Title, had authority from the America West loan committee to make any promises regarding the Deed of Trust. However, Bean testified in his deposition that when he received the payoff request from Select Title, he talked to someone at America West who told him they would put together a memo and bring it in front of the loan committee for approval. He testified that he remembered the committee approving it: "I remember them approving it because they actually sign it right then in front of everyone. And we have to sign it too." Bean signed it and emailed Kristy Kelley at Select Title that there was no payoff on the Phair residence.

LNV's assertion that Bean's statement was unauthorized is unsupported by any record evidence. LNV tries to contradict Bean's deposition testimony with a declaration from Doug Durbano. But Durbano admits he had no involvement with the Phair loan and no personal knowledge of whether or not Bean had authority to make the "no payoff" statement. He states only that he had no recollection of the request or approval. In contrast, Bean remembers receiving signed, written authority from the loan committee that there was no payoff and communicating it to Select Title. Therefore, there is no evidence in the record to dispute that

12

Bean had the requisite authority to make the statement to Select Title on behalf of America West.

Furthermore, Bean would have had apparent authority to act on America West's behalf. Bean wrote the October 15, 2008 email to Select Title as a Commercial and Real Estate Loan Officer of America West in response to a payoff request from a title agent. There is no dispute that the statement was made and the statement was made by an agent with apparent authority acting on behalf of America West.

Also, as in its own motion, LNV claims that Stommel's declaratory judgment and permanent injunction causes of action are barred by the same four-year statute of limitations as the promissory estoppel claim. However, as the court discussed above, the dispute as to the parties' rights under the Deed of Trust and the Deed of Trust's validity did not arise until LNV threatened to foreclose Stommel's property. Therefore, Stommel's causes of action were timely brought and are not barred by the statute of limitations.

The court concludes that Stommel is entitled to a declaratory judgment that the Deed of Trust has no value. Stommel's declaratory judgment cause of action is independent of the promissory estoppel claim relating to the release of the deed. America West clearly stated in writing to Select Title that there was no payoff on Phair's residence, and LNV is bound by America West's statement. As of October 15, 2008, the monetary value of the America West Deed of Trust was zero dollars. The value of the deed has not changed since that time. In addition, after the closing on the sale between Phair and Stommel, there was no remaining non-monetary value to the Deed of Trust because Phair no longer owned the property and Stommel had no connection to Phair or his commercial ventures. Accordingly, the court grants Stommel's request for summary judgment on her declaratory judgment claim. The court declares that, as

13

stated by America West, there was no payoff associated with the America West Deed of Trust and, thus, the Deed of Trust has no monetary value and cannot be the basis of a foreclosure action.

## C.  Permanent Injunction

Because the Deed of Trust has no monetary value, Stommel also seeks a permanent injunction preventing LNV from foreclosing on the property.  "A party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest."  *General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007).

Stommel has succeeded in demonstrating that there is no monetary value associated with the Deed of Trust and, therefore, there is no basis for foreclosing on the property.  Stommel faces irreparable harm if the foreclosure proceeds because she would lose her ownership interest in her residence.  In addition, the irreparable harm to Stommel outweighs the any injury to LNV. Because the Deed of Trust had no monetary value, LNV faces no financial injury in a judgment preventing it from foreclosing the property.  To the extent that LNV believes it is injured by Phair's commercial default, LNV has recourse against Phair as the personal guaranty on those commercial loans.  However, none of those loans have any connection to Stommel.  Finally, an injunction preventing LNV from foreclosing on a Deed of Trust with no monetary value is not adverse to any identified public interest.  Accordingly, the court grants Stommel's motion for summary judgment seeking a permanent injunction preventing LNV from foreclosing on the

14

Deed of Trust.  The court, therefore, issues a permanent injunction barring LNV from foreclosing the America West Deed of Trust against Stommel's property.

**D.  Attorney Fees**

Stommel argues that she is entitled to recover her attorney fees and costs under the America West Deed of Trust.  In *Dillon v. S. Mgmt. Corp. Ret. Trust*, 2014 UT 14, the Utah Supreme Court recently addressed an award of attorney fees under Utah Code Annotated Section 78B-5-826, known as "Utah's Reciprocal Fee Statute."   In *Dillon*, the Dillons filed suit to enjoin SMCRT's threatened foreclosure because the trust deed between SMCRT and the previous owner was not valid after the requested payoff had been given and the Dillons purchased the property.  *Id.* at ¶¶ 12, 22, 37.  The district court ruled in favor of the Dillons on their claims and awarded attorney fees under the Reciprocal Fee Statute, and the Utah Supreme Court held that "the district court properly awarded damages to the Dillons" under the statute.  *Id.* at ¶ 47.

Utah's Reciprocal Fee Statute states that a "court may award costs and attorney fees to either party that prevails in a civil action based upon any promissory note, written contract, or other writing executed after April 28, 1986, when the provisions of the promissory note, written contract, or other writing allow at least one party to recover attorney fees."  Utah Code Ann. § 78B-5-826.  The *Dillon* court explained that it had "recently clarified what it means for an action to be 'based upon' a contract for purposes of" applying the Reciprocal Fee Statute.  2014 UT 14 at ¶ 48.  "'An action "based upon" a contract under the statute if a party to the litigation assert[s] the writing's enforceability as a basis for recovery."  *Id.* (citation omitted).

The court found that there was "no doubt that SMCRT," as beneficiary of the trust deed, was "asserting the enforceability of the trust deed" in defending itself in the case.  *Id.*   Because

15

the trust deed provided for the payment of attorney fees in any litigation which may arise with respect to the trust deed, and had SMCRT prevailed in the action, it would have been entitled to attorneys' fees under the trust deed, the court held that the district court did not abuse its discretion in awarding attorneys' fees to the Dillons under the Reciprocal Fee Statute.  *Id.*

In this case, the Deed of Trust provides for an award of attorney fees in litigation arising with respect to it.  LNV argues that the Reciprocal Fee Statute only allows for an award if a party to the litigation asserts the writing's enforceability as a basis for recovery and Stommel's claim is not based upon a claim that the writing is enforceable.  However, that argument is contrary to the court's holding in *Dillon*.  Just like the Dillons, Stommel is seeking to enjoin a threatened foreclosure by a party alleging the enforceability of a trust deed.  LNV is relying on the validity of the America West Deed of Trust to defend itself in this case in the same manner that SMCRT was defending itself by relying on its trust deed with the prior owner of the Dillon's property. Therefore, based on the holding in *Dillon*, Stommel is entitled to attorney fees under Utah's Reciprocal Fee Statute and the America West Deed of Trust.  The court requests that Stommel submit a motion for attorney fees with the necessary documentation within thirty days of the date of this Order.

### CONCLUSION

For the reasons stated above, Defendant LNV Corporation's Motion for Summary Judgment DENIED and Plaintiff Christina Stommel's Motion for Summary Judgment is GRANTED.  The court declares that there is no value in the America West Deed of Trust and it cannot be the basis for a foreclosure action.  Accordingly, LNV is permanently enjoined from attempting to use the America West Deed of Trust to foreclose on Stommel's property.

16

DATED this 30th day of January, 2015.

BY THE COURT:

DALE A. KIMBALL
United States District Judge